IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. BANK NATIONAL ASSOCIATION | § | |
| (SUCCESSOR IN INTEREST TO STATE | § | |
| STREET BANK & TRUST COMPANY), | § | |
| AS TRUSTEE FOR THE REGISTERED | § | Civil Action No. 3:04-CV-2102-D |
| HOLDERS OF BTC COMMERCIAL | § | |
| MORTGAGE PASS-THROUGH | § | |
| CERTIFICATES, SERIES BTR TRUST | § | |
| 1991-S1, ACTING BY AND THROUGH | § | |
| ITS SPECIAL SERVICER, GMAC | § | |
| COMMERCIAL MORTGAGE | § | |
| CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| SAFEGUARD INSURANCE COMPANY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this property insurance coverage dispute, the assignee of a mortgagee moves for partial summary judgment against an insurer, seeking to establish under the Texas equitable lien doctrine that it should be treated as if it were an additional insured and loss payee. The principal question the court must decide is whether the assignee has established beyond peradventure that there is a deficiency owed on the indebtedness on the insured properties so that the assignee is entitled to recover insurance proceeds. Concluding that the assignee has met its summary judgment burden, the court grants the motion.

I

This is a removed action in which plaintiff U.S. Bank National Association (successor in interest to State Street Bank & Trust Company), as Trustee for the Registered Holders of BTC Commercial Mortgage Pass-Through Certificates, Series BTR Trust 1991-S1, acting by and through its special servicer, GMAC Commercial Mortgage Corporation ("U.S. Bank"), sues defendant Safeguard Insurance Co. ("Safeguard") for breach of contract, breach of duty of good faith and fair dealing, violations of the Texas Insurance Code, and promissory estoppel arising from Safeguard's refusal to cover damage to properties in which U.S. Bank held a mortgage interest.[1]  In 1998 Triad Dallas Properties IV, Ltd. ("Triad") borrowed $45.5 million from Bankers Trust Company ("Bankers") to purchase real estate.[2]  Triad executed a promissory note payable to Bankers and a deed of trust, security agreement, and assignment of leases and rents, fixture filing, and financing statement in Bankers' favor.  The deed of trust covered four properties in or near Dallas, Texas, and there was no separate value assigned to each individual property.  The properties are known as the

---

[1]To understand the claims that U.S. Bank asserts against Safeguard, it is necessary to consult U.S. Bank's state-court original petition and its federal-court first amended complaint.  After this case was removed, the court granted U.S. Bank leave to join Royal Indemnity Company ("Royal") and Hilb, Rogal & Hamilton Company of Alabama ("HRH") as parties-defendant.  U.S. Bank then filed an amended complaint that included Royal and HRH as defendants and asserted actions against them for negligent misrepresentation and promissory estoppel.  Despite the fact that U.S. Bank filed a first amended complaint, it did not re-assert its claims against Safeguard.  It is well settled that an amended complaint supersedes the pleading it modifies.  *See, e.g.,* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1476, at 556 (2d ed. 1990).  Nevertheless, because it is apparent that U.S. Bank did not intend to drop all claims against Safeguard except the action for promissory estoppel alleged in the first amended complaint against all defendants, the court will read the original state-court petition and first amended complaint in tandem to allege all the claims identified above.

[2]Because Safeguard is the summary judgment nonmovant, the court recounts the evidence and draws all reasonable inferences in its favor.  *See, e.g., Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000).

Belvedere, the Atrium at Bent Tree ("Atrium"),[3] the Courtyard at Arapaho ("Courtyard"), and

Fairway Plaza ("Fairway").   Bankers later assigned the deed of trust to U.S. Bank.[4] GMAC

Commercial Mortgage Corporation ("GMAC") serviced the mortgage for U.S. Bank.  A provision

of the deed of trust required Triad to maintain property insurance on the mortgaged property.  It also

required that the insurance policy contain a mortgagee clause or loss payee endorsement for the

benefit of Bankers (U.S. Bank's predecessor), the mortgagee.[5]

Safeguard provided insurance coverage for Triad's properties.  Triad obtained insurance

through Hilb, Rogal & Hamilton Company of Alabama ("HRH"), an insurance agent.  The policy

relevant to this litigation was for the period November 1, 2002 to November 1, 2003 and insured the

Triad properties as a single unit compromised of the four individual properties.  The policy listed

Triad as the named insured.  Contrary to the deed of trust provision that required that insurance

policies contain a mortgagee clause or loss payee endorsement, and despite the fact that Bankers

itself had paid the premium for the 2002-03 policy, the policy neither identified Bankers as an

additional insured nor contained a mortgagee clause.[6]

---

[3]Safeguard refers to this property as the Atrium *of*—rather than *at*—Bent Tree.  U.S. Bank, however, refers to it as the Atrium *at* Bent Tree, and this is the name recited in the deed of trust.

[4]The details of the assignment transaction and of other transactions that have placed U.S. Bank in the posture of a plaintiff seeking to recover the proceeds under the Safeguard policy are immaterial to the court's decision and need not be discussed in this memorandum opinion.

[5]Article 5.1.5 of the deed of trust provided, in relevant part: "All property insurance policies shall include a mortgagee clause or loss payee endorsement for the benefit of Beneficiary."  P. App. 19.  The deed of trust defined "Beneficiary" as "[Bankers], its successors and assigns, and the holders, from time to time, of the" accompanying promissory note.  *Id.* at 10.

[6]U.S. Bank also maintains in its opening brief that Bankers had been identified as a mortgage holder, additional insured, and loss payee on the original 2001-02 policy but had been omitted on the policy for the renewal 2002-03 term.  Safeguard disputes this contention.  In reply, U.S. Bank states merely that the court "need not bother with determining" this issue.  P. Reply Br. 11.  Because

In the spring of 2003 hailstorms damaged skylights and air conditioner coils at Atrium and damaged the roof and air conditioner units at Courtyard.  Soon thereafter, U.S. Bank deemed Triad to have defaulted on its obligations under the financing arrangement,[7] it foreclosed on Atrium, Courtyard, and Belvedere, and it purchased the properties for $27 million at foreclosure on July 1, 2003.  In the substitute deed of trust and bill of sale, the parties agreed that the lien and security interest of the deed of trust remained in full force and effect as to the fourth secured property (Fairway), which was not part of the foreclosure proceedings.  The original deed of trust provided that, in the event of a partial sale of the mortgaged property where the proceeds amounted to less than the aggregate secured indebtedness, the deed of trust and lien remained in full force and effect as to the unsold portions of the four Triad properties, as if no sale had been made.

On the same day that U.S. Bank purchased the properties at foreclosure, it also sued Triad in Texas state court for breach of contract, alleging that Triad had defaulted on its payment obligations under the promissory note and deed of trust.[8]  U.S. Bank also obtained an order placing Fairway in receivership.

Later in 2003 Courtyard's property manager submitted a property loss notice to HRH concerning the hailstorm.  She separately mailed to Safeguard's counsel a copy of the substitute

both Safeguard and U.S. Bank agree that Bankers was not named as an additional insured in the 2002-03 policy—the one relevant to this motion—the court need not resolve this dispute.

[7]The nature of the default is not clear from the briefing and is immaterial to the court's determination of this motion.

[8]State Street Bank & Trust Company, as Trustee for BTC Commercial Mortgage Pass-Through Certificates Series BTR Trust 1991-S1 ("State Street"), was the named party in the state court mortgage default proceeding.  In December 2002 State Street and U.S. Bank merged.  In this memorandum opinion, the court, as do Safeguard and U.S. Bank, will refer to U.S. Bank as the named insured in that litigation.

trustee's deed and bill of sale and notice of substitute trustee's sale.  Her cover letter noted that she had enclosed documents pertaining to the ownership and foreclosure of Courtyard.  Also in 2003 Atrium's property manager filed a property loss notice for damage sustained in the hailstorm.  She faxed the notice to HRH and included on the coversheet a note that advised that "any claim checks representing proceeds for repairs at [Atrium] due to hail damage[ ] should be made payable to [Triad] and [GMAC]."  P. App. 263.  Safeguard refused to pay insurance proceeds to U.S. Bank through GMAC, contending that U.S. Bank was not a party to the insurance policy and was not an insured party under the policy.  U.S. Bank responded by filing the instant lawsuit against Safeguard in Texas state court, which Safeguard removed to this court based on diversity of citizenship.

In February 2005 the state court presiding over U.S. Bank's lawsuit against Triad granted summary judgment in U.S. Bank's favor on its breach of contract claim.[9]  The court determined that Triad owes U.S. Bank approximately $22 million.  The judgment provides that U.S. Bank may execute on the judgment against all property that secures the note and deed of trust, including Fairway.

In the instant suit, U.S. Bank moves for partial summary judgment, contending that the Texas equitable lien doctrine compels Safeguard to treat U.S. Bank as if it were listed as an additional named insured and loss payee on the policy and that the policy provides coverage to U.S. Bank as if it were.[10]  Safeguard opposes the motion, arguing that the equitable lien doctrine is inapplicable

_____

[9]*See State Street Bank & Trust Co. v. Triad Dallas Props. IV, Ltd.*, No. 03-6662 (101st Dist. Ct., Dallas County, Tex. Feb. 10, 2005).

[10]Safeguard objects to U.S. Bank's summary judgment evidence.  Because in deciding U.S. Bank's motion the court has not considered any evidence to which Safeguard objects, the objections are overruled as moot.

because there is no deficiency remaining on the loan as to Atrium and Courtyard (the two damaged properties), the case is not ripe, and a litany of equitable doctrines, e.g., estoppel, preclude U.S. Bank's reliance on the Texas equitable lien doctrine.[11]

II

The equitable lien doctrine provides that, where "a mortgagor is charged with the duty of obtaining insurance on a property with loss payable to the mortgagee, but the policy does not contain such a provision, equity will treat the policy as having contained the loss payable provision and entitle the mortgagee to recover under the policy." *Beneficial Standard Life Ins. Co. v. Trinity Nat'l Bank*, 763 S.W.2d 52, 55 (Tex. App. 1988, writ denied).[12]

> It has been held many times by the courts of this state and practically every other state in this country that an agreement between a mortgagor and a mortgagee under which the mortgagor is charged with the duty of procuring insurance upon the mortgaged property for the benefit of the mortgagee, will encumber the proceeds of any insurance so procured by the mortgagor with a lien in favor of the mortgagee. In such cases it is the duty of the mortgagor to have a provision inserted in the policy that the proceeds shall be payable to the mortgagee as his interest might appear but, where he fails to do so, equity will treat the policy as having contained such a provision upon the principle that equity treats that as done which should have been done. Of course, if the insurer is not informed of such an agreement, it is not bound thereby, but after the information is given to it, the duty rests upon the insurer to treat the proceeds of the policy as though such a provision was written into the policy.

---

[11]Although the court usually addresses a subject matter jurisdiction challenge (here, ripeness) as a preliminary matter, the court defers consideration of the question because resolving U.S. Bank's contention that the equitable lien doctrine applies informs the court's answer concerning jurisdiction.

[12]Both parties maintain that Texas law controls in this diversity action.

*Fid. & Guar. Ins. Corp. v. Super-Cold S.W. Co.*, 225 S.W.2d 924, 927 (Tex. App. 1949, writ ref'd n.r.e.).

The equitable lien doctrine, however, does not treat the mortgagee and mortgagor as indistinctive entities. Rather, it operates to the extent necessary to preserve the mortgagee's interest. The purpose of the mortgagee clause in an insurance policy is to protect the lender who has lent money for the purchase of property. *See Fireman's Fund Ins. Co. of Tex. v. Jackson Hill Marina, Inc.*, 704 S.W.2d 131, 136 (Tex. App. 1986, writ ref'd n.r.e.). "Accordingly, when a mortgagee reduces the indebtedness by purchasing property at a foreclosure sale, the amount of the mortgagee's interest is limited to the amount of the deficiency remaining on the note after the sale." *Id.*; *see also Smith v. Tex. Farmers Ins. Co.*, 82 S.W.3d 580, 584-85 (Tex. App. 2002, pet. denied) (observing that mortgagee's interest is limited to indebtedness mortgagor owes); *Beneficial Standard*, 763 S.W.2d at 55 (holding that because lender had obtained satisfaction of loan through proceeds of foreclosure sale, lender was not entitled to any additional payment from insurance proceeds through equitable lien doctrine). Safeguard does not contest that Triad agreed to obtain insurance for Bankers' benefit or that Safeguard had notice of the agreement. Instead, Safeguard maintains that the equitable lien doctrine is inapplicable because there is no deficiency remaining on the loan as to the Atrium and Courtyard properties.

III

The court's analysis of Safeguard's claim to partial summary judgment based on the equitable lien doctrine is bipartite. First, it ascertains which party will bear the burden of proof at trial concerning the equitable lien doctrine so that it can determine what standard U.S. Bank must meet to obtain summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (holding

that summary judgment standard varies according to whether moving party will have burden of proof on claim at trial).  Second, the court applies the standard to U.S. Bank's claim that it is entitled to relief under the equitable lien doctrine.

A

U.S. Bank appears to maintain in its opening brief that Safeguard bears the burden of proof to deny U.S. Bank entitlement to a lien on the proceeds.  *See* P. Br. 8 ("After adequate time for discovery, Safeguard has been unable to establish: (a) that it is not subject to the equitable lien doctrine. . . .").  In subsequent briefing, however, U.S. Bank contends that for the doctrine to apply, it bears the burden of proving only the existence and notice of an agreement between the mortgagor and mortgagee to procure insurance.  *See* P. Final Reply at 2.  If this allocation of the burden of proof were correct, it would essentially be determinative of U.S. Bank's motion, because these two elements of the equitable lien doctrine are undisputed.  As to the key issue in deciding this motion—whether there exists a deficiency on the mortgage—U.S. Bank does not concede that it has the burden of proof.  As does Safeguard, the court thus presumes that U.S. Bank places that burden on Safeguard to establish an affirmative defense.[13]  Safeguard contests this premise.  It contends that U.S. Bank has the burden of proving that the necessary deficiency exists on the mortgage loan that

_____

[13]Generally speaking, affirmative or avoidance defenses are unrelated to the plaintiff's prima facie case.  *See AMS Staff Leasing, NA, Ltd. v. Associated Contract Truckmen, Inc.*, 2005 WL 3148284, at *5 n.10 (N.D. Tex. Nov. 11, 2005) (Fitzwater, J.).  Avoidance or affirmative defenses include "'allegations . . . that admit the allegations of the complaint but suggest some other reason why there is no right of recovery, and . . . that concern allegations outside of the plaintiff's prima facie case that the defendant therefore cannot raise by a simple denial in the answer.'"  *Barrow v. Greenville Indep. Sch. Dist.*, 2005 U.S. Dist. LEXIS 20150, at *2 (N.D. Tex. Mar. 10, 2005) (Fitzwater, J.) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1271, at 585 (3d ed. 2004)).

entitles it to the insurance proceeds.[14]  The court must therefore determine the required elements of

proof to establish that the doctrine applies, including whether U.S. Bank has overlooked its burden

with respect to a debt that has been extinguished.

Texas case law does not appear explicitly to place on either party the burden of proving the

mortgage loan deficiency that is required to establish an equitable lien claim on insurance proceeds.

U.S. Bank points to case law that supports its contention that it need only prove the existence and

notice of an agreement between the mortgagor and mortgagee to procure insurance.  *See, e.g.,*

*Guarantee Ins. Co. v. First Nat'l Bank of Jacksonville, Tex.*, 552 S.W.2d 855, 858 (Tex. Civ. App.

1977, writ dism'd w.o.j.); *Fid. & Guar. Ins.*, 225 S.W.2d at 927.  The question whether there existed

a deficiency on the mortgage, however, is not addressed in any of the cases U.S. Bank cites.

Safeguard relies on two cases to support its position that U.S. Bank bears the burden of proving

entitlement to the insurance proceeds, including a deficiency on the loan.  The first, *El Fenix de*

*Puerto Rico v. Serrano Gutierrez*, 786 F. Supp. 1065 (D.P.R. 1991), is not binding on this court.

Moreover, it is inapposite, because the court recites in the context of a maritime dispute the general

proposition that the burden of proving the existence of an insurable interest under a policy lies with

the insureds.  *See id.* at 1009.  Safeguard also relies on *Michael E. Black Profit Sharing Plan v.*

*Stephens*, 973 S.W.2d 451, 453 (Tex. App. 1998, no pet.), in which the existence of a loan

deficiency was not an issue.

The dispositive question is whether the existence of a mortgage deficiency is an element of

U.S. Bank's claim for relief under the equitable lien doctrine or whether the contention that the

---

[14]Safeguard also characterizes U.S. Bank's motion as an attempt to proffer a so-called "no evidence" motion.  While Safeguard appears to be correct conceptually, its use of the term "no evidence" motion—a Texas state-court term, *see* Tex. R. Civ. P. 166a(i)—is misplaced.

indebtedness has been extinguished is an affirmative defense as to which Safeguard bears the burden of proof. Faced with little guidance in Texas case law, the court concludes for the following reasons that U.S. Bank bears the burden of proving its entitlement to the insurance proceeds, including the burden of demonstrating the existence of a deficiency on the mortgage.

First, in *Black Profit Sharing*, which involved a dispute between two mortgagees, one of whom was not named as a loss payee and sought to establish that it had an equitable lien on insurance proceeds, the Texas Court of Appeals appears to have placed the burden of proof on the mortgagee who sought to prove the existence of the equitable lien. *See Black Profit Sharing*, 973 S.W.2d at 453 ("Absent proof of the date of the policy's issuance, Black has not met its burden to show that the policy was made for its benefit and to evince any right to share in the policy proceeds.").[15]

Second, U.S. Bank seeks to invoke the equitable lien doctrine to establish that it has superior rights to the insurance proceeds. *See Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 632 (Tex. App. 1983, writ ref'd n.r.e.) (describing doctrine as "in pursuance of equitable principles . . . equity will treat the [insurance] policy as having contained a [loss-payable] provision upon the principle that equity treats that as done which should have been done"). In Texas, complainants in equity have historically borne the burden of proof to establish superior title to property—especially with respect to land. *See McAfee v. Wheelis*, 1 Posey 65, 71, 1879 Tex. LEXIS

---

[15]Texas courts have also observed that, once the mortgagee is put in the place occupied by the insured mortgagor, the mortgagee must establish that its claim falls within the policy's language. This proposition does not assist the court, however, in determining which party bears the burden with respect to a deficiency, because the mortgage deficiency is not a requirement of the insurance policy. *See Conway v. Beltline Venture Partners*, 2000 WL 254296, at *4 (Tex. App. Mar. 8, 2000, no pet.) (unpublished opinion); *see also Fid. & Guar. Ins.*, 225 S.W.2d at 927.

156, at *10 (Tex. Comm'n App. 1879) (not precedential) ("They are seeking to set up and enforce a tacit equity against persons standing on a legal title complete and fair on its face; and, therefore, they must assert and establish the facts which constitute their equity.'"); *Houston Oil Co. of Tex. v. Ainsworth*, 192 S.W. 614, 616 (Tex. Civ. App. 1916) (noting that "the burden of proof is always on the party asserting an equitable right or an equitable title against the holder of the legal title."), *rev'd on other grounds*, 228 S.W. 185 (Tex. Comm'n App. 1921, holding approved).  Although U.S. Bank does not in this lawsuit seek title to Atrium or Courtyard, this maxim also weighs in favor of placing the burden on U.S. Bank as the party who asks that the court do equity.

Third, the evidentiary principle that the party with access to information is commonly assigned the burden of proof with respect to that element of a claim further supports placing the burden of proof on U.S. Bank.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 n.45 (1977) ("Presumptions shifting the burden of proof are often created to reflect judicial evaluations of probabilities and to conform with a party's superior access to the proof."); *United States v. Overton*, 834 F.2d 1171, 1176 (5th Cir. 1987) ("[T]he party with superior knowledge of the facts is better able to prove its intent, and superior access to proof is a common justification for allocating the burden of proof.").  In these circumstances, the mortgagee rather than the insurer can be expected to possess superior knowledge of and access to information about a mortgage deficiency.

From the Texas case law, principles of equity, and evidence jurisprudence, the court holds that U.S. Bank as the mortgagee bears the burden of proving its entitlement to the insurance policy proceeds under the equitable lien doctrine, including the doctrinal requirement that there be a deficiency on the mortgage.

B

Because U.S. Bank is moving for partial summary judgment on an issue as to which it will have the burden of proof at trial, to be entitled to summary judgment, it "must establish 'beyond peradventure all of the essential elements of the claim[.]'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that U.S. Bank must establish beyond peradventure that there is a deficiency on the $45.5 million loan to Triad such that U.S. Bank is entitled to insurance proceeds from hail storm damage to Atrium and Courtyard.

U.S. Bank maintains that the foreclosure on the three Triad properties did not satisfy completely the mortgage obligation. It points to the state court judgment as evidence that Triad owes U.S. Bank approximately $22 million under the original deed of trust and promissory note. U.S. Bank urges that there exists a deficiency on the loan, the equitable lien doctrine applies, and it is entitled to the insurance proceeds for the two properties.

Both parties acknowledge that the existence of a deficiency on the mortgage loan from U.S. Bank to Triad is governed by the original and substitute deeds of trust. U.S. Bank contends that, because its remedies under the original deed of trust to collect the Triad debt owed are cumulative, its election to foreclose on three of the four properties did not extinguish its rights to collect the remaining loan deficiency. Specifically, Article 7.1 of the deed of trust provides: "If an Event of Default shall occur, [Bankers] may, at its option, . . . exercise one or more or all of the following remedies:" e.g., accelerate the loan, operate or sell the property, or appoint a receiver to manage it. U.S. Bank reasons that, "[t]hough the [substitute deed of trust] does expressly exclude [Fairway], the fact that it expressly reserves the lien on one item does not act to impliedly release the liens on all the various other collateral not expressly sold under the [substitute deed of trust]." P. Reply. Br.

7.  It therefore argues that its recovery of $27 million through foreclosure on three of the four Triad properties does not affect its entitlement to the balance on the $45.5 million loan through all remaining remedies, including recovery of insurance proceeds, entry of a default judgment, appointment of a receiver, or otherwise.

Safeguard posits that no deficiency remains concerning the three properties foreclosed on because U.S. Bank elected to attach its security interest and any remaining debt thereunder solely against the remaining unsold property (Fairway).  Exhibit A attached to the substitute deed of trust provides that the lien and security interest of the original deed of trust remain in full force and effect as to remaining real and personal property associated only with Fairway.  Moreover, Article 7.1.4 of the original deed of trust similarly provides that, upon partial sale, the deed of trust and lien remain in full force and effect as to the unsold portions of the properties, "just as though no sale had been made."  P. App. 373.  Relying on these deed of trust provisions and, despite the election of remedies provision of the original deed of trust, Safeguard maintains that, because Triad and U.S. Bank agreed that any deficiency that remained on the original mortgage loan was no longer secured by the three foreclosed-on properties, no deficiency exists as to these properties.

The facts of this case—which involve the mortgagee's election to foreclose on some but not all of several properties that secured a single loan and to secure the balance of the loan with only the remaining property—complicate somewhat the otherwise basic determination of the existence of a loan deficiency.  Nevertheless, the narrow question the court must decide is whether Triad still owes money on the loan, that is, whether a deficiency remains.  The court concludes that the summary judgment evidence establishes beyond peradventure that there is a deficiency on the loan.

The existence of such a deficiency is apparent from an examination of the structure of the transaction between Triad and Bankers, as reflected in the two deeds of trust. Bankers loaned Triad $45.5 million on terms intended to maximize the possibility that Bankers would be repaid. The terms were written to increase the amount of collateral that secured the loan and the available remedies in the event of a default. For instance, Articles 1.21 and 1.25 of the original deed of trust listed as collateral, *inter alia*, land, buildings, fixtures, rents, personalty, and insurance policies and proceeds. Article 7.1 provided that U.S. Bank's remedies to recover the amount loaned were cumulative. P. App. 372 ("If an Event of Default shall occur, [Bankers] may, at its option, . . . exercise one or more or all of the following remedies:" e.g., accelerate the loan, operate or sell the property, or appoint a receiver to manage it.). Accordingly, under the terms of the original deed of trust, U.S. Bank's election to foreclose on some of the collateral had no effect on its remedial rights with respect to the remaining collateral.

By parsing the language of the substitute deed of trust, Safeguard posits that U.S. Bank has elected one remedy (foreclosure) against three of the four properties, thereby extinguished the debt as to them. This contention is fatally flawed, however, because U.S. Bank did not relinquish any right to recover its debt by exercising its contractual right to foreclose. That is, by electing one remedy, U.S. Bank did not cede others. Rather, by foreclosing, U.S. Bank simply acted to reduce the total amount of indebtedness owed to it by Triad as per the terms of the agreement.

Moreover, Safeguard's contention that U.S. Bank's $27 million bid at foreclosure extinguished the debt as to the three foreclosed-on properties incorrectly assumes that the $45.5 million debt was legally divided among the four individual properties. The loan documents indicate that the listed collateral and available remedies secured a total loan amount, and U.S. Bank's rights

- 14 -

to repayment of the full loan amount were cumulative against all of the collateral offered as security. For example, Article 9.26 of the original deed of trust provided that each of the four properties could be "released" as collateral for the loan only if certain conditions were met.[16]   And there is no evidence in the summary judgment record that would permit a reasonable finding that U.S. Bank "released" the properties as collateral or even that the conditions precedent to their release had arisen.  The court can thus ascertain the existence of a mortgage deficiency in these circumstances by examining the amount U.S. Bank has already recovered, i.e., $27 million at foreclosure, on its $45.5 million loan to Triad.[17]

Moreover, the court's conclusion is consistent with the policy behind the equitable lien doctrine, the purpose of which is "to protect the security interest of one who has advanced money to another for the purchase of property."  *Fireman's Fund Ins. Co. of Tex.*, 704 S.W.2d at 136.  Not even Safeguard maintains that U.S. Bank's $45.5 million loan has been repaid entirely; it only contends that U.S. Bank has been repaid with respect to the three foreclosed-on properties, including the two that suffered hail damage.

---

[16]Article 9.26 of the deed of trust provided that if any of the four properties was sold, Bankers could "release" the property from the lien of the deed of trust if several conditions were satisfied.  The conditions included, *inter alia*, that Triad had not defaulted on the loan and that Bankers had been paid more than $38.4 million for Belvedere, Atrium, and Courtyard, collectively, to reduce the loan balance.

[17]The state court default judgment that U.S. Bank obtained against Triad establishes a loan deficiency of approximately $22 million, which includes interest.  This amount is of course substantially greater than the estimated $18.5 million deficiency reached by simply subtracting the foreclosure bid from the total loan amount.  The court need not determine the exact amount of the mortgage deficiency for purposes of deciding this motion, because the summary judgment evidence sufficiently establishes that the remaining indebtedness far exceeds the balance of the insurance proceeds.  *See* D. Notice of Removal, Ex. 3 (noting that estimate for Triad's damage claim at Courtyard is approximately $100,000).

Finally, if Safeguard were to retain the insurance proceeds, it would presumably obtain a windfall, because Triad is unlikely to seek recovery. *See U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.,* No. 3:04-CV-2102-D, at 3 (N.D. Tex. Apr. 6, 2005) (order) (Fitzwater, J.) (noting that Triad "conducts no business, has a negative net worth, no employees, no resources to pay counsel, and it considers any insurance claim or proceeds to be the property of" U.S. Bank).

The court thus concludes that U.S. Bank has established beyond peradventure that a deficiency exists on the mortgage such that the equitable lien doctrine is applicable to the insurance policy proceeds.[18]

### III

Safeguard maintains that if the court determines that a deficiency exists, (1) the court lacks subject matter jurisdiction because U.S. Bank's claim of entitlement to a lien is not ripe and (2) the claim is barred by the doctrines of res judicata, collateral estoppel, judicial estoppel, election of remedies, and unclean hands.

### A

Safeguard contends that, because U.S. Bank elected to place Fairway into a receivership and obtain a default judgment, the amount of the mortgage deficiency is not quantifiable and "any decision by this Court would be an advisory [opinion] and lead[ ] to potential double recovery." D. Br. 18. It posits that the amount of the mortgage deficiency is unquantifiable because the receiver who operates Fairway is to offset future rents, profits, and other income generated by the property

---

[18]U.S. Bank also advances an unclear assertion that it is entitled to the insurance proceeds by reason of its purchase of the foreclosed-on property. Because the court grants partial summary judgment motion on other grounds, it need not consider this contention.

to the mortgage deficiency until Triad's debt is extinguished pursuant to the state court default judgment.

Safeguard's contention concerning ripeness is misplaced. The state court judgment merely establishes the amount of the deficiency on which U.S. Bank is attempting to recover through permissible remedies, including obtaining rents and profits from the receivership and equitable liens on insurance proceeds. The fact that U.S. Bank is proceeding through multiple, simultaneous remedies to reduce the amount of Triad's indebtedness does not preclude it from recovering based on a lack of ripeness. To determine whether a case is ripe for adjudication, the court looks to factors such as whether the plaintiff will sustain immediate injury and whether such injury would be redressed by the relief requested. *See Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985) (observing that doctrine's "basic rationale is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements") (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). Safeguard does not maintain that U.S. Bank lacks injury, or that its injury would not be redressed by the relief requested. There is thus no impediment to the court's acting, because U.S. Bank suffers greater injury the longer the insurance proceeds remain unpaid. Safeguard's suggestion appears to be that other relief, i.e., the receivership and default judgment, obviates the need for a decision by this court. Safeguard has not demonstrated that the case is not ripe or that the court lacks subject matter jurisdiction.

B

Safeguard maintains that U.S. Bank's claim is otherwise barred by the doctrines of res judicata, collateral estoppel, judicial estoppel, election of remedies, and unclean hands.

1

Safeguard contends that res judicata and collateral estoppel bar this lawsuit because of the state court mortgage default lawsuit that U.S. Bank brought against Triad.  In determining whether the present suit is barred by the state court judgment, the court applies state law.  *See Landscape Design & Constr., Inc. v. Transp. Leasing/Contract, Inc.*, 2002 WL 257573, at *3 (N.D. Tex. Feb. 19, 2002) (Fitzwater, J.).  Under Texas law, res judicata and collateral estoppel apply if this action is based on the same claims as were raised or could have been raised in state court.  *See Transp. Concepts, Inc. v. S.F. French Bread Co.*, 2000 WL 1175642, at *1 (N.D. Tex. Aug. 17, 2000) (Fitzwater, J.) (describing res judicata elements under Texas law); *Dittmann v. City of Garland*, 1998 WL 574774, at *3 (N.D. Tex. Aug. 31, 1998) (Fitzwater, J.) (same as to collateral estoppel).  Neither doctrine applies to this action, which concerns an insurance dispute with an insurer.  The state court judgment addressed a mortgage default action brought against the mortgagor.  Furthermore, the parties are distinct; Safeguard was not a party to the state court judgment and Triad is not a party to this lawsuit.

2

Safeguard next maintains that U.S. Bank is judicially estopped from bringing its claim because, in the state court default proceeding, U.S. Bank "warranted and swore . . . that all offsets had been accounted for without any mention whatsoever of the claim for insurance proceeds at issue in this case."  D. Br. 21.  Moreover, U.S. Bank introduced evidence in that proceeding of the deed of trust, which acknowledged that the entire indebtedness owed under the mortgage was secured only by Fairway.

"Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position."  *In re Wakefield*, 293

B.R. 372, 378 (N.D. Tex. 2003) (Fitzwater, J.) (internal quotation marks and alteration omitted).

Courts apply the doctrine "when two requirements are met: the position of the party to be estopped

is clearly inconsistent with its previous one, and the party convinced the court to accept the previous

position." *Id.* Judicial estoppel is inapplicable in the present case.  The sworn pleadings presented

in the state court mortgage default proceeding merely represented that, at that time (specifically,

"through January 10, 2005"), all setoffs had been accounted for.  This is consistent with U.S. Bank's

current position.  None of the positions that Safeguard identifies is inconsistent such that judicial

estoppel bars U.S. Bank's suit in equity.

3

Safeguard contends that U.S. Bank's claim is barred by the doctrine of election of remedies.

It maintains that, "by voluntarily electing to for[ ]go foreclosure against Fairway[ ], and pursuing

the entire debt in the [state court action], [U.S. Bank] elected its remedy and should be precluded

from now arguing that it is entitled to an equitable lien on the insurance proceeds."  D. Br. 22.

Safeguard also posits that U.S. Bank may obtain a double recovery from this lawsuit and the state

court default judgment.

Safeguard's contention is without merit.  The doctrine of election of remedies will generally

"'bar recovery when the inconsistency in the assertion of a remedy, right, or state of facts is so

unconscionable, dishonest, contrary to fair dealing, or so stultifies the legal process or trifles with

justice or the courts as to be manifestly unjust.'" *J & D Aircraft Sales, LLC v. Cont'l Ins. Co.*, 2004

WL 2389445, at *10 (N.D. Tex. Oct. 26, 2004) (Boyle, J.) (quoting *Bocanegra v. Aetna Life Ins.*

*Co.*, 605 S.W.2d 848, 851 (Tex. 1980)); *see also Ditmore v. Fairfield Indus., Inc.*, 855 F. Supp. 187,

192 (S.D. Tex. 1994) ("[T]he election of remedies doctrine applies as a bar to the relief sought if it

is affirmatively shown that the plaintiff has successfully exercised an informed choice between two or more remedies, rights or sets of facts which are so inconsistent as to constitute manifest injustice."). As this court has already determined *supra* at § III(B), U.S. Bank is owed a balance on its loan to Triad. And, pursuant to the terms and conditions of the original deed of trust, U.S. Bank may seek to recover this deficiency through multiple, simultaneous remedies until the debt is extinguished. Because U.S. Bank is still owed a debt, there is no injustice in its recovering the loan deficiency through this equitable lien action in addition to obtaining the state court default judgment and foreclosing on some of the property. *See State Street Bank & Trust Co. v. Triad Dallas Props. IV, Ltd.*, No. 03-6662 (101st Dist. Ct., Dallas County, Tex. Feb. 10, 2005) (adjudging amount of mortgage deficiency and ordering that mortgagee may execute judgment against all property that may in the future secure the deed of trust); *see also Lester v. First Am. Bank*, 866 S.W.2d 361, 366 (Tex. App. 1993, writ denied) ("'Mortgagees are constitutionally entitled to no more than payment in full.'") (quoting *Gelfert v. Nat'l City Bank of New York*, 313 U.S. 221, 233 (1941)). Moreover, U.S. Bank obtains nothing more from a lien on these insurance proceeds than it is entitled to under the deed of trust, that is, nothing more than if it were a named insured and loss payee on the Safeguard policy. Accordingly, U.S. Bank will not obtain a double recovery in this action because it will obtain nothing more than what it was promised under the loan agreement.

4

Safeguard contends that the doctrine of unclean hands bars U.S. Bank's claim in equity. It identifies several grounds that it maintains demonstrate U.S. Bank's misbehavior, including that U.S. Bank asserted in this lawsuit, before removal, that it had foreclosed on all mortgaged property, when in fact Fairway was operated by a receiver, that it may obtain double recovery as a result of this

lawsuit, that it failed to advise Safeguard of the state court suit against Triad, and that it misrepresented in the state court deficiency proceeding that Triad had been awarded "credit for all setoffs and/or payments." D. Br. 23. Several of Safeguard's grounds are repetitive of those that the court has already rejected as bases precluding U.S. Bank's claim, and those that remain would not permit a reasonable trier of fact to find that U.S. Bank's conduct "'has been unconscientious, unjust, marked by a want of good faith or violates the principles of equity and righteous dealing.'" *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004) (quoting *City of Fredericksburg v. Bopp*, 126 S.W.3d 218, 221 (Tex. App. 2003)). For example, U.S. Bank's erroneous statement as to the properties' foreclosed on in its initial factual recitation in this lawsuit, which it has corrected and made clear to the court, does not rise to the level that would permit a reasonable trier of fact to find unclean hands. The court thus concludes that U.S. Bank's claim for application of the equitable lien doctrine is not barred by the doctrine of unclean hands.

*   *   *

U.S. Bank has satisfied its summary judgment burden of establishing beyond peradventure that it is entitled under the equitable lien doctrine to be treated as an additional named insured and loss payee. Its March 17, 2005 motion for partial summary judgment is therefore granted.

**SO ORDERED**.

January 4, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE